**Lawrence WILSON, Plaintiff,**

v.

**SAMPSON BROS. & COOPER, INC., et al., Defendants.**

**Civ. A. No. 6820.**

United States District Court
E. D. Louisiana,
New Orleans Division.

April 9, 1959.

---

G. Harrison Scott, Charles E. Richards, New Orleans, La., for plaintiff.

Robert G. Hughes, Stanley E. Loeb, New Orleans, La., for defendants.

J. SKELLY WRIGHT, District Judge.

On June 18, 1956 Lawrence Wilson inhaled hydrocyanic acid gas, or hydrogen cyanide, while in the warehouse of J. T. Gibbons, Inc. where he was employed. The warehouse had been fumigated with the gas by the defendant, Sampson Bros. & Cooper, Inc. On June 22, 1957 Wilson died of cirrhosis of the liver. In these proceedings brought against the fumigator and its liability insurer,[1] Wilson's wife[2] and minor child make claim for his suffering and death, alleging that the inhalation of the gas at least aggravated his cirrhosis of the liver, if, indeed, it did not cause it.

On Friday, June 15, 1956, after working hours, the warehouse of J. T. Gibbons, Inc. was closed up and hydrogen cyanide released therein by Sampson Bros. The warehouse was kept closed after the introduction of the gas until Sunday, June 17th, when Sampson Bros. employees, using gas masks, went into the premises and opened all the windows for the purpose of ridding the warehouse of the gas through ventilation. On Sunday afternoon, some six hours later, employees of Sampson Bros. again entered the premises, without gas masks, but with HCN detector kits for the purpose

of determining whether the building was gas-free. It was so determined. The building was left open and employees of J. T. Gibbons, Inc., including Wilson, were allowed to enter the building the following morning, Monday, June 18, 1956.

About 9:00 A.M., on the third floor of the building, Wilson became ill from inhalation of hydrocyanic acid gas. His indisposition, however, was short-lived for he returned to work after a few minutes' rest and after advising his superior with Gibbons that he had become ill from the gas. Wilson continued to work until sometime in July, 1956 when he saw Dr. Greenberg for treatment for a liver condition. He was given some pills and returned to work. On August 18, 1956, Wilson's stomach having become distended, he was placed in the hospital where he stayed until August 30th. The diagnosis of the treating physician at that time, Dr. Klinger, was toxic hepatitis and cirrhosis of the liver. He returned to work, his stomach swelled again, and he was back in the hospital in November, where he returned intermittently for inpatient treatment until his death, June 22, 1957. The cause of death was cirrhosis of the liver.

Plaintiffs contend that cirrhosis of the liver can be, and in this case was, caused, or at least aggravated, by the inhalation of hydrocyanic acid gas. They are supported in this position by Dr. Morell Miller, an internist, who admits that he has had no experience in the treatment of patients affected by this gas. While he obviously was in some doubt about the matter, Dr. Miller finally testified that from his readings on the subject he would say it was probable that, in the circumstances of this case, the inhalation of the hydrogen cyanide gas caused Wilson's cirrhosis. Dr. Plaa, a doctor of philosophy, also supported plaintiffs' position. Dr. Plaa testified that he had made experiments with rats using potassium cyanide, rather than hydrogen

---

1. Under LSA–R.S. 22:655.

2. On Wilson's death, Mrs. Wilson was substituted as party plaintiff herein.

cyanide, and that in every case there was liver damage when the cyanide was administered.

Opposed to the testimony submitted by the plaintiffs in support of their theory of causation of Wilson's cirrhosis, the defendants relied on the testimony of Dr. Greenberg, Dr. Davis, Dr. Hartwell and Mr. Cecil Shilstone, a consulting chemist. Dr. Greenberg, who had treated Wilson for the greater part of his illness, testified that he did not know what caused Wilson's cirrhosis and could not say whether it had been aggravated by the inhalation of hydrogen cyanide. Dr. Davis, a gastroenterologist with the Ochsner Clinic, who also treated Wilson over a period of time, testified that there was no connection, even by aggravation, between the inhalation of hydrogen cyanide and Wilson's cirrhosis. Dr. Hartwell, a pathologist, explained the action of hydrogen cyanide and its effect upon the body after inhalation. He testified that hydrogen cyanide paralyzes the enzymatic action of the cells, thus preventing the cells from accepting oxygen from the blood. The first effect of such paralysis, according to Dr. Hartwell, would be on the brain which, if denied oxygen, even for a matter of minutes, would result in death. He testified further that where the inhalation of hydrogen cyanide was not fatal, the gas was expelled from the body through breathing and sweating without ill effect on any organ thereof. Dr. Hartwell was corroborated in his explanation of the action of hydrogen cyanide by the chemist Shilstone who testified further that while hydrogen cyanide was not deleterious to the liver, potassium cyanide, such as used by Dr. Plaa on rats, was for the reason that potassium cyanide contains a caustic, similar to lye, which would, of course, erode any tissue with which it came in contact.

All of the doctors submitted by both sides admitted that all of the causes of cirrhosis were not known. All of them likewise, however, stated positively that the best known cause for cirrhosis of the liver was excessive use of alcohol. According to the hospital records, Wilson was an "old alcoholic." Wilson's first wife, from whom he was divorced, testified that he drank excessively, and the vice-president of Gibbons, who employed Wilson, testified that Wilson was hired on condition he would not drink, a previous employment of Wilson by Gibbons having indicated the necessity for the exaction of this condition. Wilson's present wife, the plaintiff here, testified that Wilson drank on weekends, but not excessively.

From the above outline of the facts of this case, it appears that the plaintiff has failed in her burden of proving by a preponderance of the evidence that the death of her husband, Lawrence Wilson, was caused by the inhalation of hydrogen cyanide, or that his condition, assuming that he was suffering from cirrhosis of the liver at the time of the incident in suit, was aggravated by such inhalation. On the basis of the credible medical testimony, which indicates that hydrogen cyanide is unknown as a cause of cirrhosis, on the basis of the expert testimony, which indicates that the action of hydrogen cyanide is such that it kills by depriving the brain of oxygen without otherwise affecting the organs of the body, and on the basis of the history of indulgence in alcohol, which, admittedly, is a cause of cirrhosis of the liver, it cannot be said on this record that the inhalation of a slight amount of hydrogen cyanide by Wilson on June 18, 1956 caused his death on June 22, 1957 or in any way aggravated any condition of his liver from which he might then have been suffering.

Judgment for the defendant.